UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

<u>Juan Antonio Gutierrez</u>

    v.                                          Case No. 15-cv-514-LM

<u>Carolyn W. Colvin, Acting</u>
<u>Commissioner, Social</u>
<u>Security Administration</u>

### <u>REPORT AND RECOMMENDATION</u>

Pursuant to 42 U.S.C. § 405(g), Juan Gutierrez moves to reverse the Acting Commissioner's decision to deny his applications for Social Security disability insurance benefits, or DIB, under Title II of the Social Security Act, 42 U.S.C. § 423, and for supplemental security income, or SSI, under Title XVI, 42 U.S.C. § 1382.  The Acting Commissioner, in turn, moves for an order affirming her decision.  For the reasons that follow, this matter should be remanded to the Acting Commissioner for further proceedings.

### I.  <u>Standard of Review</u>

The applicable standard of review in this case provides, in pertinent part:

> The [district] court shall have power to enter, upon
> the pleadings and transcript of the record, a judgment
> affirming, modifying, or reversing the decision of the

> Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .

42 U.S.C. § 405(g) (setting out the standard of review for DIB decisions); see also 42 U.S.C. § 1383(c)(3) (establishing § 405(g) as the standard of review for SSI decisions). However, the court "must uphold a denial of social security . . . benefits unless 'the [Acting Commissioner] has committed a legal or factual error in evaluating a particular claim.'" Manso-Pizarro v. Sec'y of HHS, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam) (quoting Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).

As for the statutory requirement that the Acting Commissioner's findings of fact be supported by substantial evidence, "[t]he substantial evidence test applies not only to findings of basic evidentiary facts, but also to inferences and conclusions drawn from such facts." Alexandrou v. Sullivan, 764 F. Supp. 916, 917-18 (S.D.N.Y. 1991) (citing Levine v. Gardner, 360 F.2d 727, 730 (2d Cir. 1966)). In turn, "[s]ubstantial evidence is 'more than [a] mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Currier v. Sec'y of HEW, 612 F.2d 594, 597 (1st Cir. 1980) (quoting Richardson v. Perales, 402

2

U.S. 389, 401 (1971)).  But, "[i]t is the responsibility of the [Acting Commissioner] to determine issues of credibility and to draw inferences from the record evidence.  Indeed, the resolution of conflicts in the evidence is for the [Acting Commissioner], not the courts."  Irlanda Ortiz v. Sec'y of HHS, 955 F.2d 765, 769 (1st Cir. 1991) (per curiam) (citations omitted).  Moreover, the court "must uphold the [Acting Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence."  Tsarelka v. Sec'y of HHS, 842 F.2d 529, 535 (1st Cir. 1988) (per curiam).  Finally, when determining whether a decision of the Acting Commissioner is supported by substantial evidence, the court must "review[ ] the evidence in the record as a whole."  Irlanda Ortiz, 955 F.2d at 769 (quoting Rodriguez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981)).

## II.  Background

The parties have submitted a Joint Statement of Material Facts.  That statement, document no. 15, is part of the court's record and will be summarized here, rather than repeated in full.

Gutierrez has been diagnosed with various physical and

mental impairments. He applied for both DIB and SSI in June of 2012.

In July of 2012, Gutierrez's physical residual functional capacity ("RFC")[1] was assessed by Karen Cammack, a single decisionmaker,[2] who reviewed his medical records, including the results of a consultative examination commissioned by the Social Security Administration ("SSA").[3] Cammack's RFC assessment was later affirmed by Dr. Burton Nault, a state-agency medical consultant who did not examine Gutierrez. Based upon her review of Gutierrez's medical records, Cammack identified no postural,

---

[1] "Residual functional capacity" is a term of art that means "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a)(1) & 416.945(a)(1).

[2] "A single decisionmaker is an employee of the Social Security Administration who has no medical credentials." Chambers v. Colvin, No. 15-cv-150-JL, 2016 WL 614405, at *4 (D.N.H. Feb. 16, 2016) (citing Stratton v. Astrue, 987 F. Supp. 2d 135, 138 n.2 (D.N.H. 2012); Goupil v. Barnhart, No. 03-34-P-H, 2003 WL 22466164, at *2 n.2 (D. Me. Oct. 31, 2001)).

[3] The consultative examiner, Dr. Karen Marrero, diagnosed Gutierrez with left knee pain, cervical spine intervertebral disc disease, lumber spine intervertebral disc disease, opioid dependence, a history of anxiety, cannabis and cocaine dependence, and hypertension. With regard to Gutierrez's ability to engage in work-related activities, Dr. Marrero opined: "Claimant [could be] expected to sit, stand, walk, carry, handle objects, hear, speak, write, and travel with regular breaks. Bending expected 2/3 of the time. No work-related mental activities restrictions." Administrative Transcript 365.

manipulative, visual, communicative, or environmental limitations on his ability to engage in work-related activities. With respect to exertional limitations, Cammack determined that Gutierrez could lift and/or carry 10 pounds frequently and 20 pounds occasionally, and could both stand and/or walk, and sit, for about six hours in an eight-hour workday.

In July of 2012, the SSA referred Gutierrez to Tiffany Schiffner, a psychologist, for a consultative examination. Based upon her examination, Dr. Schiffner prepared a Disability Evaluation on Gutierrez.  In her report, Dr. Schiffner gave Gutierrez the following diagnoses:

> Adjustment Disorder with Depressed and Anxious Mood (Based on the records, self-report and clinical observations).
>
> Rule Out Cocaine Abuse (Based on self-report and clinical observations).[4]
>
> Polysubstance Abuse by History (Cannabis, Alcohol and Amphetamine) (Based on self-report and clinical observations).

Administrative Transcript (hereinafter "Tr.") 368.  With regard

---

[4] "'Rule-out' in a medical record means that the disorder is suspected but not confirmed — i.e., there is evidence that the criteria for a diagnosis may be met, but more information is needed in order to rule it out." Byes v. Astrue, 687 F.3d 913, 916 n.3 (8th Cir. 2012) (citing United States v. Grape, 549 F.3d 591, 593 n.2 (3d Cir. 2008)).

to Gutierrez's functional ability, Dr. Schiffner had this to say: "Social functioning is moderately impaired based on his report of his isolating behaviors.  Functional ability is moderately impaired based on his mental health symptomatology." Id.

In July of 2012, Gutierrez's mental RFC was assessed by Dr. Beth Klein, a non-examining psychologist who reviewed his medical records.  Dr. Klein indicated that Gutierrez had limitations in three of the four areas she reported on: (1) understanding and memory; (2) sustained concentration and persistence; and (3) social interaction.  She reported no limitations in the area of adaptation.  Dr. Klein summarized her opinions on Gutierrez's mental RFC this way:

> [Gutierrez] should be able to remember work-like procedures, understand and remember very short & simple instructions, but may have up to mod[erate] diff[iculties] [with] detailed instr[uctions].
>
> [Gutierrez] should be able to carry out very short & simple instr[uctions], perform activities within a schedule, sustain an ordinary routine [without] special supervision, work [with] others without being distracted, and make simple work-related decisions. Will likely have up to [mod]erate diff[iculties] carrying out detaned instr[uctions] and maintaining att[ention]/conc[entration] for ext[ended] [periods]. Overall, [claimant] should be able to complete a normal workweek with no more than mild interference from mental [symptoms].
>
> [Gutierrez] should be able to interact approp[riately]

> with the general public, ask simple questions, maintain socially appropriate behavior with reasonable [hygiene], and approp[irately] accept f[eed]back from supervisors. Will likely have up to mod[erate] diff[iclty] getting along with coworkers.[5]

Tr. 68-69, 80-81. Dr. Klein's mental RFC assessment was subsequently affirmed by another non-examining state agency consultant, Dr. Michael Schneider.

After the SSA denied Gutierrez's applications for benefits, he received a hearing before an Administrative Law Judge ("ALJ"). Subsequently, the ALJ issued a decision that includes the following relevant findings of fact and conclusions of law:

> 3. The claimant has the following severe impairments: degenerative disc disease, osteoarthritis, obesity, and adjustment disorder (20 CFR 404.1520(c) and 416.920(c)).
>
> . . . .
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> . . . .
>
> 5. After careful consideration of the entire record,

---

[5] She supported her conclusions concerning Gutierrez's capacity for social interaction with findings that Gutierrez had moderate limitations in his ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes.

7

>the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can stand and/or walk about 6 hours in an 8-hour workday, and sit about 6 hours in an 8-hour workday, both with normal breaks.  He can lift and/or carry 10 pounds frequently and 20 pounds occasionally.  The claimant can perform unskilled work, defined as work that can be learned in 30 days or less.  He can remember work-like procedures, and carry out 1 to 3-step instructions, but is unable to carry out detailed instructions.  He is able to maintain concentration, persistence and pace for two-hour blocks of time with normal breaks.  He can have routine, superficial interaction with coworkers.
>
>. . . .
>
>6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).
>
>. . . .
>
>10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.96(a)).

Tr. 25, 26, 27, 31, 32.  Without relying upon the testimony of a vocational expert ("VE"), and without providing any evidence or explanation, the ALJ concluded that Gutierrez's nonexertional limitations, including his limitation to "hav[ing] routine, superficial interaction with coworkers," had "little or no effect on the occupational base of unskilled light work."  Tr. 27, 32.

## III. Discussion

### A. The Legal Framework

To be eligible for disability insurance benefits, a person must: (1) be insured for such benefits; (2) not have reached retirement age; (3) have filed an application; and (4) be under a disability. 42 U.S.C. §§ 423(a)(1)(A)-(D). To be eligible for supplemental security income, a person must be aged, blind, or disabled, and must meet certain requirements pertaining to income and assets. 42 U.S.C. § 1382(a). The question in this case is whether Gutierrez was under a disability from June 4, 2012, through May 28, 2014, which is the date of the ALJ's decision.

To decide whether a claimant is disabled for the purpose of determining eligibility for either DIB or SSI benefits, an ALJ is required to employ a five-step process. See 20 C.F.R. §§ 404.1520 (DIB) and 416.920 (SSI).

> The steps are: 1) if the [claimant] is engaged in substantial gainful work activity, the application is denied; 2) if the [claimant] does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted; 4) if the [claimant's] "residual functional capacity" is such that he or she can still perform past relevant work, then the application is denied; 5) if the [claimant], given his or her residual

functional capacity, education, work experience, and age, is unable to do any other work, the application is granted.

Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001) (citing 20 C.F.R. § 416.920).

The claimant bears the burden of proving that he is disabled. See Bowen v. Yuckert, 482 U.S. 137, 146 (1987). He must do so by a preponderance of the evidence. See Mandziej v. Chater, 944 F. Supp. 121, 129 (D.N.H. 1996) (citing Paone v. Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982)). However,

> [o]nce the [claimant] has met his or her burden at Step 4 to show that he or she is unable to do past work due to the significant limitation, the Commissioner then has the burden at Step 5 of coming forward with evidence of specific jobs in the national economy that the [claimant] can still perform. Arocho v. Sec'y of Health & Human Servs., 670 F.2d 374, 375 (1st Cir. 1982). If the [claimant's] limitations are exclusively exertional, then the Commissioner can meet her burden through the use of a chart contained in the Social Security regulations. 20 C.F.R. § 416.969; Medical-Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P, App. 2, tables 1-3 (2001), cited in 20 C.F.R. § 416.969; Heckler v. Campbell, 461 U.S. 458 (1983). "The Grid," as it is known, consists of a matrix of the [claimant's] exertional capacity, age, education, and work experience. If the facts of the [claimant's] situation fit within the Grid's categories, the Grid "directs a conclusion as to whether the individual is or is not disabled." 20 C.F.R. pt. 404, subpt. P, App. 2, § 200.00(a), cited in 20 C.F.R. § 416.969. However, if the claimant has nonexertional limitations (such as mental, sensory, or skin impairments, or environmental restrictions such as an inability to tolerate dust, id. § 200(e)) that restrict his [or her] ability to perform jobs he [or

> she] would otherwise be capable of performing, then the Grid is only a "framework to guide [the] decision," 20 C.F.R. § 416.969a(d) (2001). See also Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996) (discussing use of Grid when applicant has nonexertional limitations).

Seavey, 276 F.3d at 5 (parallel citations omitted).

**B.  Gutierrez's Claims**

Gutierrez claims that the ALJ erred by improperly assessing the credibility of his subjective complaints of pain and also erred, at Step 5, by failing to obtain testimony from a vocational expert. Gutierrez' second claim is persuasive, and dispositive.

In a recent decision, Magistrate Judge Rich characterized the law of this circuit regarding when an ALJ may determine that a claimant is not disabled, at Step 5, without the benefit of testimony from a VE:

> The Grid generally cannot permissibly be used as a vehicle to meet the commissioner's Step 5 burden – vocational expert testimony ordinarily must be sought instead – if a claimant's nonexertional impairments significantly affect his or her ability "to perform the full range of jobs" at the appropriate exertional level. Ortiz v. Secretary of Health & Human Servs., 890 F.2d 520, 524 (1st Cir. 1989) (citation and internal quotation marks omitted). "[A]though a nonexertional impairment can have a negligible effect, ordinarily the ALJ must back such a finding of negligible effect with the evidence to substantiate it, unless the matter is self-evident." Seavey v. Barnhart, 276 F.3d 1, 7 (1st Cir. 2001) (citation and internal quotation marks omitted).

11

Parker v. Colvin, No. 1:15-cv-00446-JHR, 2016 WL 4994997, at *6 (D. Me. Sept. 19, 2016). Moreover, as Judge Barbadoro has recently noted, "[t]he First Circuit has cautioned that 'an ALJ typically should err on the side of taking vocational evidence when a [non-exertional] limitation is present in order to avoid needless agency rehearings.'" Brindley v. Colvin, No. 14-cv-548-PB, 2016 WL 355477, at *5 (D.N.H. Jan. 29, 2016) (quoting Ortiz, 890 F.2d at 528) (remanding where ALJ neither called vocational expert nor explained why reliance upon the Grid was appropriate, but "merely stated, without explanation or citation to record evidence, that [the claimant's] non-exertional limitations have little or no effect on the occupational base of light unskilled light work") (internal quotation marks and citation to the record omitted); see also Pacensa v. Astrue, 848 F. Supp. 2d 80, 90-91 (D. Mass. 2012).

    Here, the ALJ included three non-exertional limitations in Gutierrez's RFC: (1) an ability to carry out one- to three-step instructions, but not detailed instructions; (2) an ability "to maintain concentration, persistence and pace for two-hour blocks of time with normal breaks," Tr. 27; and (3) a capacity for "routine, superficial interaction with coworkers," id. Based upon Seavey, and the ALJ's failure to explain or support his

determination that Gutierrez's nonexertional limitations "have little or no effect on the occupational base of light unskilled work," Tr. 32, the ALJ was free to resolve Gutierrez's claim at Step 5 without evidence from a vocational expert only if it is self-evident that the three limitations he identified would have negligible effect upon a claimant's ability to perform the full range of unskilled light work. The problem lies with the limitation the ALJ found with respect to Gutierrez's ability to interact with coworkers.[6]

With regard to the mental abilities necessary to perform unskilled work, guidance from the SSA provides:

> The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; <u>to respond appropriately to</u> supervision, <u>coworkers</u>, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base.

Social Security Ruling ("SSR") 85-15, 1985 WL 56857, at *4 (S.S.A. 1985) (emphasis added).

---

[6] Because this matter is being remanded, and a VE will offer evidence that takes into consideration all of Gutierrez's nonexertional limitations, there is no need to determine whether either of the other two, standing alone, would require the ALJ to take testimony from a VE.

In Parker, the court ruled that the ALJ's failure to acknowledge evidence that the claimant "had limitations bearing on her ability to respond appropriately to supervision and/or coworkers . . . undermined his reliance on the Grid" because "it is not self-evident that [those limitations] would have had only a negligible effect on the [claimant's] ability to perform the full range of work at all exertional levels." 2016 WL 4994997, at *7 (citing Gurney v. Astrue, Civ. No. 09-153-B-W, 2010 WL 323912, at *3 (D. Me. Jan. 20, 2010)). The decision in Gurney, on which Judge Rich relied in Parker, is both on point and persuasive. In Gurney, when assessing the claimant's RFC, the ALJ identified six limitations, including a limitation to occasional interaction with co-workers and supervisors. See 2010 WL 323912, at *1. Notwithstanding the limitations he identified, the ALJ determined that the claimant was not disabled, at Step 5, without relying upon the testimony of a VE. In the district court, the claimant argued that the testimony of a VE was required due to three limitations in her RFC, including a limitation to occasional interaction with co-workers. See id. at *3. The magistrate judge deemed it unnecessary to consider all three of the claimant's limitations, and recommended a remand, because

14

> the commissioner . . . failed to make a persuasive case that one of those limitations, the restriction to only occasional interaction with supervisors and co-workers, has no more than a negligible effect on a claimant's ability to perform the full range of unskilled jobs.

Id.

Here, the Acting Commissioner has failed to make a persuasive case that a limitation to superficial interaction with coworkers has only a negligible effect on a person's ability to perform the full range of unskilled light work. As a preliminary matter, the court notes one difference between the limitation in Gurney and the limitation in this case. In Gurney the claimant was limited to "only occasional interaction with supervisors and co-workers." 2010 WL 323912, at *3 (emphasis added). In this case, the ALJ found that Gutierrez was limited to superficial interaction with coworkers. See Tr. 27. That difference, however, cuts in Gutierrez's favor:

> [T]he restriction to only superficial contact with co-workers is a significant non-exertional limitation that makes reliance on the Grids inappropriate here. It is difficult to see how such a limitation — as opposed to, say, only occasional contact with one's coworkers — would not have a significant impact on plaintiff's ability to perform a full range of sedentary work. See SSR 85-15, 1985 WL 56857 at *4 (noting "[a] substantial loss of ability" to respond appropriately to co-workers "would severely limit the potential occupational base").

Lewis v. Astrue, No. 3:11-cv-05482-RJB-KLS, 2012 WL 1022219, at *10 (W.D. Wash. Mar. 5, 2012), R & R adopted by 2012 WL 1022202 (Mar. 26, 2012). So too here. It is difficult to see how a limitation to superficial interaction with coworkers would not have a significant impact on Gutierrez's ability to perform a full range of unskilled light work.

In response to Gutierrez's claim that the ALJ was obligated to obtain VE testimony, the Acting Commissioner acknowledges Gurney, but then frames the following counterargument:

> [O]nly significant limitation in interaction erodes the potential job base. SSR 85-15, 1985 WL 56857, at *4. This Court has held that a limitation in the RFC, "to avoid overly critical supervision," did not substantially erode the occupational base. Beaton v. Astrue, 2011 DNH 046, 2011 WL 1051060, at *7; see also Garcia-Martinez v. Barnhart, 111 F. App'x 22, 23, 2004 WL 2240136 (1st Cir. Oct. 1, 2004).

Doc. No. 14-1, at 8. That argument is not persuasive.

To begin, the ALJ did find a significant limitation in interaction; he determined that Gutierrez was limited to only superficial interaction with coworkers. Beyond that, the Acting Commissioner's reliance upon Beaton and Garcia-Martinez is misplaced. In Beaton, the ALJ found that the claimant was limited to employment without "overly critical supervision," and the ALJ ruled against him at Step 5, without taking testimony from a VE. 2011 WL 1051060, at *7. After calling it a close

question, Judge DiClerico determined that "the ALJ's determination was . . . minimally sufficient." Id. (citations omitted).  However, the limitation in Beaton referred to the nature of supervision while the one in this case refers interaction with coworkers.  Because of the differences between the limitation in Beaton and the limitation in this case, Judge DiClerico's decision in Beaton has no particular bearing on the question before this court.  As for Garcia-Martinez, it is sufficient to note that while the Acting Commissioner cites that case for the proposition that "[a] limitation to 'routine work' does not preclude reliance on the Grids," doc. no. 14-1, at 7, the issue here is a limitation to "routine, superficial interaction with coworkers," Tr. 27, not a limitation to routine work.  Because Garcia-Martinez involved no limitation on the claimant's ability to interact with coworkers, the opinion in that case is inapposite, and offers no useful guidance for the resolution of this case.

    Given the foregoing discussion of Beaton and Garcia-Martinez, the court concludes that the Acting Commissioner "has failed to make a persuasive case that . . . the restriction to only [superficial] interaction with . . . co-workers . . . has no more than a negligible effect on [Gutierrez's] ability to

perform the full range of unskilled jobs." Gurney, 2010 WL 323912, at *3.

Parker, Gurney, and Lewis all counsel in favor of remand. "To be sure, several courts have drawn the opposite conclusion under similar facts." Boley v. Astrue, No. 11-10896, 2012 WL 680393, at *13 (E.D. Mich. Feb. 10, 2012) (citations omitted), R & R adopted by 2012 WL 680392 (Mar. 1, 2012). But as Magistrate Judge Grand points out in Boley, in most of those cases, "the courts supported their decisions only with the regulation's language [i.e., language in SSR 85-15] that unskilled work generally deals with objects rather than people." This court concurs with Judge Grand's appraisal of those decisions as unpersuasive because "[n]one [of them] addressed the specific proposition that a limited ability to respond to supervisors and/or co-workers 'would severely limit the potential occupational base.'" Id. (quoting SSR 85-15, 1985 WL 56857, at *4; citing 20 C.F.R. § 404.1545). Moreover, as Judge Grand also points out, even though unskilled jobs typically require those performing them to work primarily with objects rather than people, those jobs still require the ability to respond appropriately to supervision and coworkers. See Boley, 2012 WL 680393, at *11. In other words, there is a difference between

18

what a person works with, i.e., things or people, and the context in which he or she works, i.e., in a solitary rather than a populous workplace. In short, like Parker, Gurney, and Lewis, Boley (along with numerous other decisions cited therein, see 2012 WL 680393, at *12) convinces this court that the specific limitations in Gutierrez's RFC required the ALJ to call upon a vocational expert at Step 5, and that his failure to do so necessitates a remand.

## IV. Conclusion

For the reasons given, the Acting Commissioner's motion for an order affirming her decision, document no. 14, should be denied; Gutierrez's motion to reverse that decision, document no. 12, should be granted; and this matter should be remanded to the Acting Commissioner for further proceedings, pursuant to sentence four of 42 U.S.C. § 405(g). The clerk of the court should be directed to enter judgment in favor of Gutierrez and close the case.

Any objection to this report and recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). Failure to file an objection within the specified time waives the right to appeal the district court's

order. See United States v. De Jesús-Viera, 655 F.3d 52, 57 (1st Cir. 2011); Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010) (only issues fairly raised by objections to magistrate judge's report are subject to review by district court; issues not preserved by such objection are precluded on appeal).

_/s/ Andrea K. Johnstone_
Andrea K. Johnstone
United States Magistrate Judge

October 13, 2016

cc: Carol Avard, Esq.
 Raymond Kelly, Esq.
 Robert Rabuck, AUSA